LAW OFFICE OF NATASHA NORRIS
750 West 2nd Avenue, Suite 210
Anchorage, Alaska 995021
P:      907-222-7771
F:      907-222-4827
Natasha.Norris@acsalaska.net

Attorney for Ajela Banks

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 3:19-cr-00005-SLG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AJELA BANKS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT BANKS' SENTENCING MEMORANDUM

### SUMMARY OF MS. BANKS' SENTENCING REQUEST

| | |
|---|---|
| TERM OF IMPRISONMENT | 10 months |
| SUPERVISED RELEASE | 5 years |
| SPECIAL ASSESSMENT | $100.00 |

I.  **INTRODUCTION**

Ms. Banks, the Defendant, by and through defense counsel Natasha Norris, submits the following memorandum to aid the Court at the imposition of sentence hearing scheduled for Thursday, April 29, 2021. The central question presented in this matter is what sentence will be sufficient but not greater than necessary to achieve the goals Congress established in 18 U.S.C. § 3553(a).

At sentencing, Ms. Banks will request a sentence of 18 months, followed by a five (5) year term of supervised release to include appropriate internet conditions and mental health counseling. Congress did not prescribe a mandatory `minimum sentence for this offense. The advisory Guideline range proposed by the presentence report is 97 to 121 months. A sentence within the Guideline range vastly overstates the danger Ms. Banks poses to the public. In fact, the Probation Officer is only recommending a 60 month sentence, which is well below the Guideline range.

An 18 month sentence, followed by a five year term of supervised release, is sufficient but not greater than necessary to achieve the sentencing goals embodied in 18 U.S.C. § 3553(a). The proposed sentence reflects the seriousness of Ms. Banks's conduct, recognizes extenuating circumstances about Ms. Banks, and her history, and provides for her rehabilitation and reintegration into her community.

II.  **GUIDELINE LEVEL**

In the presentence report, its noted that there is no specified guideline for a violation of 18 U.S.C. § 1594(c), Conspiracy to Engage in Sex Trafficking of Minors. PO Jedrosko submits

the base level as 24, considering that the offense level for Conspiracy is the substantive offense, which in this case, is Engaging in Sex Trafficking of Minors, covered under USSG §2G1.3. (Pg 11of PSR). He further computed the guideline level considering the involvement of two minors, guideline enhancements, and acceptance of responsibility. The total offense level computed by PO Jedrosko is 29, which yields 97 to 121months.

### A. This Guideline is Advisory Only

In *United States v. Booker*, 543 U.S. 220, (2005), the Supreme Court declared the Federal Sentencing Guidelines advisory to avoid the Sixth Amendment error inherent in the federal sentencing scheme. Each time the Supreme Court has returned to the *Booker* remedial opinion, it has embraced its central holding. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) (*Booker* instructed district courts to read the United States Sentencing Guidelines as "effectively advisory."); *Spears v. United States*, 129 S. Ct. 840, 842 (2009) (per curiam) ("cocaine Guidelines, like all other Guidelines, are advisory only."); *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.").

### III. OBJECTIONS TO PSR

Ms. Banks offers clarification to paragraph 9, pg 5 of the draft PSR. Regarding KC's statement about Grant getting "physical" with Ms. Banks, "getting physical" with Ms. Banks included hitting and strangulation. Grant punished Ms. Banks using violence, both hitting and strangulation, as well as verbal abuse, when Ms. Banks did not do as Grant told her to do.

3

Ms. Banks offers further clarification to paragraph 13, pg 6 of the draft PSR. Ms. Banks was never Grant's equal. Grant used force for Ms. Banks to comply with his demands of her, which included helping the two minors post for dates, Ms. Banks herself had to provide Grant with 500 dollars a day, etc. Ms. Banks was in no way in a partnership with Grant. She did not receive money from the two minor girls, as Grant did.

Ms. Banks offers additional information to paragraph 14, pg 6 of the draft PSR. Ms. Banks submits that when the police stopped the vehicle driven by Grant with her in it, there were multiple guns in the bags, in the vehicle. Further, Ms. Banks asked the police to take her home, and they did not.

Ms. Banks objects to Paragraph 15, pg 7 of the draft PSR. Marika Alex deleted the account, not Ms. Banks. In paragraph 16, pg 7 of the draft PSR, it says that Ms. Banks told Grant during a phone call that she deactivated the Snapchat account- which she submits that she actually did say to Grant- but only because he was pestering her. It was M. Alex that deleted the account.

Ms. Banks objects to the description of what happened regarding the agent and herself on December 20, 2018 in a hotel lobby, as described in paragraph 19, pg 7 of the draft PSR. Ms. Banks was healing from being shot twice by Grant. She was use a walker. The agent grabbed the cell phone from Ms. Banks (instead of asking for it as its described in the PSR). This was upsetting to Ms. Banks, how the agent handled the situation. She denies that she tried to get physical with the agent.

Ms. Banks wishes to add to paragraph 20, pg 8 of the draft PSR. Although there were allegations that Ms. Banks had three videos and nude photos on her phone, as alleged by a minor

4

that Ms. Banks took these videos and pictures (which would amount to child pornography), there is absolutely no evidence validating this claim found on any phone seized by the Government.

Ms. Banks wishes to add information to paragraph 30 of the draft PSR. Ms. Banks suffered both emotional and physical abuse from Grant, to the point of being shot twice by Grant – in the stomach and vagina, while she was pregnant with their child. Ms. Banks had to turn over the money to Grant. In no way was Ms. Banks a partner to Mr. Grant, or equal.

Ms. Banks objects to paragraph 35, pg 11 of the draft PSR. The offense of trafficking of minors could not be done without the use of computers/phones etc- it is conduct of the offense itself, thereby it should be part of the base offense level, rather than an enhancement.

Ms. Banks would like to add to paragraph 75, pg 16 of the draft PSR. Ms. Banks was horrifically abused by her father, as was her siblings and mother. The abuse included all that the PO listed in paragraph 75, but also included being chained to a post in their basement. Ms. Banks' father would chain her up, her siblings up, and even her mother up, in the basement, as a form of punishment.

Ms. Banks objects to and clarifies paragraph 78. Her juvenile arrest record out of California should show that she was indeed arrested in California on prostitution charges at 15 years old. Ms. Banks was running between California and Alaska at this time. She was trafficked by eight different pimps in California, as a minor. AUSA Reardon acknowledges that Ms. Banks indeed, was trafficked, in California, as a minor. This fact is not disputed by AUSA Reardon.

5

Ms. Banks adds information to paragraph 91, pg 19 of the PSR. Ms. Banks indeed worked as a stripper, but that was required by Grant. Money that she made, to the tune of at least 500 per day, had to go to Grant.

### IV. RESPONSE TO GOVERNMENT'S MOTION FOR ORDER OF FORFIETURE

The Government filed a Motion for Preliminary Order of Forfeiture on July 1, 2020. In the motion, the Government lists four iphones seized. Ms. Banks does not object to the forfeiture of the listed iphones.

### V. A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY 3553 (A)

Because every sentence must be tailored to fit the individual defendant and individual offense, it only makes sense that certain sentences will call for different levels of punishment, as well as distinct consequences even for the same base offense. Ms. Banks asks that the Court consider her history, up through the events involving Grant- and the threats and actual violence perpetrated on Ms. Banks by Grant. Ms. Banks was not a partner or an equal to Grant. She was one of the group of young females Grant "pimped". Further, Ms. Banks points out that she, herself is young- she had just turned 19 years old when the alleged incidents occurred in the fall of 2018.

Defense counsel submits to the Court that this case was indeed, a very trialable case. Ms. Banks was a victim of trafficking as a minor. She ran from California back to Alaska- where she was taking classes, and got a job at JC Penny's. Ms. Banks did engage in some prostitution- a

6

very minimal amount of "dates", only to ensure that she would not lose her apartment. Ms. Banks was working very hard to normalize her life before Grant came into it. Once he came into it, and he sought her through Facebook, not the other way around, she was forced to start stripping, to take on many more dates, and to help the two minors get dates themselves. Ms. Banks had a child in July, 2019. Ms. Banks entire focus is on getting custody of her child back, being a parent to her child, and living a safe, healthy, legal life. It is this sincere motivation, to be with her child, that singularly drove Ms. Banks to accept responsibility and reach an agreement with the Government, rather than go to trial.

### A. Nature of the Offense

Ms. Banks acknowledges that she assisted Grant in trafficking two female minors. Again, she was not much older than the minors, being only 19, while Grant and M. Alex are both in their 30s. Ms. Banks is sickened that assisted in any way, the trafficking of minors. She herself was a victim of being trafficked. Ms. Banks submits that her involvement with the minors was because of Grant's use of force and verbal abuse. But, there is no question by Ms. Banks, the seriousness of sexually trafficking minors.

The Government argues in their sentencing memorandum that Ms. Banks was armed while assisting the minors on their "dates" with adult males. Ms. Banks submits that while she was under the duress of Grant's threats and physical violence, so she was there to make sure money went to Grant, she was primarily interested in the safety of those two minor females. She wanted to make sure that men did not hurt them. Her motivation was to protect those females. Being a young female herself, she felt she had to be armed at times to protect herself and others.

Further, Ms. Banks indeed used the victims' age to extort customers with arrest if they did not pay money, as submitted by the Government in their sentencing memorandum. What is not included is the reasoning behind this. Ms. Banks was hoping to have the minors actually avoid having sex with the adult males altogether, and just using this scheme to get money from them to go to Grant. It was done with the minor victims' in mind.

**B.      History and Characteristics of Ms. Banks**

Ms. Banks was horrifically abused by her father when she was very young. Her entire family, including her mother, suffered at the hands of her father. It is widely believed that her brother was killed by their father. Ms. Banks reports that as a young child, her mother took her and her siblings fled their father, and ended up in Alaska. Ms. Banks' mother suffered extreme PTSD, as well as other mental health issues. Ms. Banks acted out as a teenager, and was placed at MYC. OCS had removed her and her siblings and placed them with foster parents. Ms. Banks jumped from house to house. She at one point ran away to California where she was trafficked herself, as a minor.

The AUSA does not dispute this horrific history for Ms. Banks, who comes before this court as a young, twenty year old woman. Not only is her history horrific, she has had some mental health issues to contend with as well(many a result of the abuse, neglect, instability etc suffered by her father, and all of the men that sexually abused her as a minor while in California). Furthermore, Grant caused serious trauma to Ms. Banks. He threatened her, he put his hands on her, and he verbally/emotionally abused her as well. Ms. Banks was looking to escape the "life" (the sex industry—going on "dates" with men for money) altogether. She had

8

normal jobs, she had an apartment- she was almost entirely successful at leaving that life behind--- when she met Grant.

Defense counsel cannot stress enough to the Court how trialable this case is/was. The affirmative defense of being under duress at the hands of Grant was available to Ms. Banks. His violence towards Ms. Banks led up to him shooting her--- twice! Once in the vagina, and once in the stomach, when she was pregnant with his child. The incident happened on the night she was packing and leaving Anchorage to testify against a former pimp in California, who trafficked her when she was a minor. Instead of going to California to do just that, Mr. Grant shot Ms. Banks.

### C. The Need for Deterrence

Ms. Banks has been in custody for almost two years. She has been separated from her infant child. This whole situation has been more than enough deterrence to Ms. Banks so that she is never caught up in this lifestyle again- with another abusive male using her to pimp her out to males. She has her daughter to think of- and her own well-being. Ms. Banks submits to the Court that 18 months, which at this point is time served, is more than adequate amount of time for deterrence of Ms. Banks.

### D. Protection of the Public from Ms. Banks

Given all of the information provided to the Court above, Ms. Banks submits that an 18 month sentence, along with five years of supervised probation, is adequate protection of the public from Ms. Banks. Ms. Banks wants nothing more than a safe, legal, and healthy lifestyle for both her and her infant child, upon release from custody. She is motivated to not ever return to the dangerous sex industry lifestyle which includes trafficking. Ms. Banks wants no part of that for her or her daughter's future.

9

### E. The Need for Educational, Vocational of Other Care or Treatment

Ms. Banks will need to tend her mental health upon release, as well as vocational training so she can provide for her child and herself. Ms. Banks will further need to participate in State of Alaska OCS classes so that she can obtain and retain the custody of her infant child.

### F. Sentencing Disparity

Ms. Banks is asking for 18 months. Marika Alex, Mr. Grant's true co-consipirator, and partner, only received a two months imprisonment. It seems vastly unfair that Ms. Banks serve so much more time that Alex, who was much more culpable in this case, serving more as a partner to Grant, than Ms. Banks ever did. However, Grant was recently found guilty in trial, and it is expected that he will be serving quite a lengthy sentence, very much deserved and earned by his horrific acts towards the minor victims, and Ms. Banks herself, in this case. The disparity between Ms. Banks and Mr. Grant in their sentences, is wholly warranted, given the circumstances.

## VI. <u>CONCLUSION</u>

Ms. Banks will ask this Court to impose a sentence of 18 months to serve, with a five year period of supervised probation. Ms. Banks, as PO Jedrosko submits, cannot afford a fine. AUSA Reardon is not asking for a fine, either. Given Ms. Banks' history, given the facts of this case, including being shot twice by Grant, while pregnant with their child, a departure from the

Sentencing Guideline range, 97 to 121 months, is more than warranted. Ms. Banks accepted responsibility, and has served almost two years. She should not serve one more day.

DATED this 27th day of April, 2021.

Respectfully submitted,

ATTNOREY AT LAW
FOR THE DISTRICT OF ALASKA

/s/ Natasha Norris
Law Offices of Natasha Norris
Alaska Bar No. 0111071
750 West Second Avenue, Suite 210
Anchorage, AK 99501
Ph: (907) 222-7771
Fax: (907) 222-4827
Natasha.norris@acsalaska.net

Certification:

I certify that on April 27th, 2021, a copy of the
Foregoing document, was served electronically on:
Kyle Reardon, Assistant US Attorney

/s/ Shaina Palmer